INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, and James R. Hoffa, Plaintiffs,

v.

AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS et al., Defendants.

Civ. A. No. 21783.

United States District Court
E. D. Michigan, S. D.
April 8, 1963.

James E. Haggerty, Sr., Detroit, Mich., William E. Bufalino, Wilkes-Barre, Pa., for plaintiffs.

D. Charles Marston, Rothe, Marston, Mazey, Sachs & O'Connell, Detroit, Mich., for defendants.

ROTH, District Judge.

In this case the Court has before it for disposition several motions: Plaintiffs' Motion to Drop Party Plaintiff; Defendants' Motion to Dismiss the Complaint and to Quash Service; and Defendants' Motion to Strike or Dismiss the Amended Complaint. The Court will consider the last and the first of these three motions, as this course will clear the underbrush and get us to the tree.

■■ An amendment to a complaint which adds or drops a party requires an order of the Court (Rule 21, F.R.Civ.P.), regardless of whether it precedes or follows the first responsive pleading of any defendant. Rule 15(a), F.R.Civ.P., refers, in general terms, to the broad subject of changes in the parties to the action, by adding or dropping some of such parties. Any conflict or ambiguity which results from a comparison of the two rules must be resolved in favor of the specific and against the general. Thus, when a proposed amendment to a complaint seeks to effect a change in the parties to the action, Rule 21, F.R.Civ. P., controls and, to that extent, limits Rule 15(a), F.R.Civ.P. See Pacific Gas & Electric Co. v. Fibreboard Products, D.C., 116 F.Supp. 377.

■ Here the plaintiffs cavalierly failed to ask for leave of court and to notify the opposite parties. It may be that plaintiffs were aware that where such leave is sought, the moving party is required to exercise due diligence and that it would be probable that the Court would not consider a delay of sixteen months as an exercise of due diligence. Of course, plaintiffs may have had other reasons—alternatives readily come to mind in view of the peculiar court history of this case.

The motion of the plaintiffs to drop a party plaintiff; i. e., International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is denied.

The motion to strike the amended complaint is granted.

What was once a legal attack by James R. Hoffa and the Teamsters, which he heads, on George Meany and the AFL & CIO, which the latter heads, and, seem-

ingly for good measure, twenty-five other officers of the AFL & CIO, plaintiffs would now change to an action by James R. Hoffa against the AFL & CIO. Recognizing that it is the spring of the year, (and the SECOND spring, since the plaintiffs started this action) perhaps the Court should overlook the frolicking. · This substantial metamorphosis is consistent with the assertion that, for purposes of the action, the defendant labor organization is a legal entity; but for purposes of diversity, it falls into a classification "unknown" to plaintiffs' counsel, and therefore characterized as a "hybrid" form of organization. As Humpty Dumpty said, "When I choose a word, it means just what I choose it to mean—neither more nor less."

In order to get the full benefit of the legal juggling act by the plaintiffs, a partial chronological history of the pleadings in this suit must be considered:

October 23, 1961 — Complaint filed. Summons and copy of complaint given to United States Marshal.

December 4, 1961 — Twenty-four summons issued.

March 19, 1962 — Order appointing special process server, Elmer J. Kragh. (The petition states: "Now comes James E. Haggerty, attorney for the plaintiffs herein, and moves this Court to appoint Elmer J. Kragh, special process server, to serve the summons and the complaint filed in this action on October 23, 1961, upon the defendants herein, *for the reason that if the Marshal was to attempt service, a great deal of time would be spent by him.*" (*Underlining* supplied)

September 21, 1962 — Kragh, special process server, made a return of service as to twenty-four defendants on "Mr. Reuther, Vice President of the AFL–CIO, while he was at Cobo Hall in Detroit, Michigan * * * September 12, 1962."

October 2, 1962 — Defendants (the twenty-four "served") filed Motion to Dismiss and Motion to Quash Service.

October 16, 1962 — Defendants filed Amended Motion to Dismiss and Motion to Quash Service.

November 23, 1962 — Deputy Marshal: "Returned this Writ at Detroit, Michigan, November 8, 1962, for want of official upon who to make service."

February 19, 1963 — Motion by plaintiffs to drop party plaintiff (International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America).

February 22, 1963 — Affidavit in opposition to defendants' Motion to Dismiss and to Quash.

February 22, 1963 — Amended complaint filed.

---

Having disposed of the Motion to Drop a Party Plaintiff and the Motion to Strike the Amended Complaint, we view the complaint as subjected to attack by the Motion to Dismiss and the Motion to Quash Service.

The Motion to Dismiss urges that there is a lack of the requisite diversity of citizenship between the plaintiffs and the defendants. The pleadings and affidavits of the plaintiffs appear enough to support this assertion. Paragraph 5 of the complaint alleges that the defendant American Federation of Labor and Congress of Industrial Organizations is an unincorporated labor organization which is doing business in the State of Michigan. The affidavit of Mr. Haggerty in support of plaintiffs' Motion to Drop Party Plaintiff gives the substance of this same allegation respecting the plaintiff International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and urges that the Court enter an order dropping the named plaintiff "for the following reasons, to wit: (1) Because said plaintiff as a labor organization has no independent citizenship but takes derivatively the multiple citizenship of its members."

In argument, counsel for plaintiffs may have added to semantic lore by drawing some distinctions between the plaintiff labor organization and the defendant labor organization—distinctions which were not visible to the Court and which counsel could not support with legal authority. It is interesting to note that plaintiffs, who were fairly generous in the number of defendants they selected for their attention in this case, should have singled out a Michigan citizen, Mr. Reuther, to "exclude out" as a party defendant, but "include in" as a vice president of the defendant labor organization for the purpose of claiming proper service on the said labor organization and twenty-three individual defendants—accomplished at one fell swoop by plaintiffs' specially selected process server, who was to, and did in fact, save the Marshal so much time. Mr. Kragh knew how to serve twenty-four summons without consuming a lot of time—once he got up steam! In this case it took him six months. Mr. Kragh completely confirms Mr. Haggerty's assertion that he (Mr. Kragh) was "responsible and diligent and willing to devote all the time necessary to effect service" on the defendants.

But for the sober reassurances of plaintiffs' counsel, the Court would be tempted to agree with the defendants' claim that this suit was filed primarily for "public relations" purposes. Certainly the defendants find substantial support for their claim in the language employed in the complaint filed. To put

it charitably, it seems designed for widespread dissemination, through news media, rather than for the information and edification of a judge or jury. The chronological chart of this case also lends color to the charge that plaintiffs' objectives were, in the main, achieved upon the filing of the suit; the handling of process in this case (virtually completely under the control of the plaintiff or plaintiffs in any action) does not leave the compelling impression that plaintiffs were anxious to reach the issue and trial stage of this law suit.

The Court is called upon to test the complaint in this case against the requirements of federal law relating to diversity cases. The complaint does not contain the necessary allegations of diversity of citizenship. See Rule 8(a), F.R.Civ.P. and 28 U.S.C. § 1332. Paragraph 5 of the complaint says nothing of the citizenship of the labor organization defendant, and Paragraph 6 of the complaint alleges only that the individual defendants are citizens of the United States.

Viewed as a whole, the Court would be hard put to postulate a suit with more fatal defects and less staying power than this one. Whether this observation is true or untrue, and if true, whether it came about by design or accident, is immaterial for our purposes. What is of importance is that it be terminated as a "dry run"; the parties litigant and their counsel be freed to pursue more useful tasks; and the Court allowed to attend to the urgent needs of other litigants.

▆ The Motion to Quash Service is granted, as there was no service, nor any serious attempt at service, on the defendants.

▆ The Motion to Dismiss the Complaint is granted for lack of required allegations as to diversity of citizenship and for failure on the part of the plaintiffs to exercise ordinary diligence in the prosecution of their action.

Costs may be taxed by the defendants.