THE STATE OF NEVADA, on the Relation of JAMES BRENNAN, MYRON LEAVITT, JAMES A. RYAN, ROBERT BROADBENT and TOM WIESNER, Constituting THE BOARD OF COUNTY COMMISSIONERS of CLARK COUNTY, STATE OF NEVADA, Petitioners, v. LORETTA BOWMAN, County Clerk of Clark County, State of Nevada, and Ex Officio Clerk of the Board of County Commissioners of Clark County, State of Nevada, Respondent.

No. 6912

November 14, 1972                    503 P.2d 454

---

[Rehearing denied December 29, 1972]

*David Goldwater,* of Las Vegas, and *Richard W. Blakey,* of Reno, for Petitioners.

*Roy A. Woofter,* District Attorney, and *George F. Ogilvie, Jr.,* Chief Civil Deputy District Attorney, Clark County, for Respondent.

**OPINION**

By the Court, THOMPSON, J.:

The purpose of this original proceeding in mandamus, instituted by the State on relation of the Board of County Commissioners of Clark County, is to determine the constitutionality of Stats. Nev. 1971, ch. 502 [NRS 242B] approved

April 24, 1971. The remedy is appropriate. State v. Brown, 88 Nev. 339, 497 P.2d 1364 (1972).

The challenged law authorizes the creation of an express trust in real or personal property, or both, to provide funds to further a public function, and allows a governmental subdivision to be the beneficiary thereof. A trust indenture drawn pursuant to that authority was, on April 25, 1972, signed by James Brennan, Myron Leavitt, James Ryan, Robert Broadbent and Tom Wiesner (The Board of County Commissioners of Clark County), Trustors, Jerry Herbst, Mark Gammett and Harry Lahr, Trustees, for the benefit of Clark County, Beneficiary. The name of the trust is "The Clark County, Nevada, Transit Authority," and its primary purpose is to finance, construct and operate an elevated rapid transit system connecting McCarran International Airport with other points in Clark County. On the same day the Board of County Commissioners approved the trust indenture, accepted the same as beneficiary, and directed its Chairman and Clerk to attest the acceptance clause, and provided that such acceptance would not be effective until such attestation. The Clerk of the Board has refused to so attest. This proceeding was commenced to compel her to do so. Her refusal rests upon legal advice that ch. 502 is unconstitutional.

1. The significant provisions of NRS 242B.010; 242B.020; 242B.030; 242B.040; 242B.100, were borrowed from Title 60, sections 176 to 180, inclusive, Oklahoma Statutes of 1951. The legislature is presumed to know the construction placed upon an adopted statute by the highest court of the state from which it was taken, and such construction is an aid in ascertaining the legislative intent. McLane v. Abrams, 2 Nev. 199, 202 (1866); Gossage v. Crow Point M. Co., 14 Nev. 153, 157 (1879); O'Brien v. Commissioners, 41 Nev. 90, 102, 167 P. 1007 (1917); Harris v. Harris, 65 Nev. 342, 346, 196 P.2d 402 (1948).

In Board of County Commissioners v. Warram, 285 P.2d 1034 (Okla. 1955), the Oklahoma Supreme Court approved the statutory scheme of that state as one which permitted the creation of a charitable public trust to further a proper function of the governmental body designated as the beneficiary thereof. We, therefore, presume that the Nevada Legislature intended to accomplish the same objective by enacting NRS 242B.

2. Many constitutional challenges are tendered. None has merit. The statute is neither a local nor a special law contrary to art. 4, § 20, of our Constitution, since it is statewide in application and applies to the state, and every subdivision or agency thereof. NRS 242B.010(1).[1] Neither does the enactment purport to "regulate" county business. Cauble v. Beemer, 64 Nev. 77, 177 P.2d 677 (1947). The act does not provide for the loan of state credit in violation of art. 8, § 9, of the Constitution. Rather, it specifically provides that the beneficiary of the trust shall not be charged "with any liability whatsoever by reason of any act or omission committed or suffered in the performance of such trust or in the operation of the trust property." NRS 242B.040(3). As noted in Board of County Commissioners v. Warram, 285 P.2d 1034 (Okla. 1955), the funds donated to the trust and the trust estate do not have their origin in public funds nor in the proceeds of taxation or the operations of the governmental beneficiary. Id. at 1041. General governmental funds are not to be expended. Cf. State ex rel. Nev. Bldg. Auth. v. Hancock, 86 Nev. 310, 468 P.2d 333 (1970); Gibson v. Mason, 5 Nev. 229 [5 Nev. 283] (1869).

Art. 8, § 1, of our Constitution which provides that "The Legislature shall pass no special act in any manner relating to corporate powers. . . ." does not bear upon the statute under consideration. The act does not relate to corporate powers, but instead, concerns itself with charitable public trusts. Neither does the act violate the constitutional limitation on the state public debt limit, art. 9, § 3, since a state debt is not and cannot be involved.

NRS 242B.070 provides that the State Board of Finance shall first approve the method of finance proposed by any trust created under the act. This is not an unlawful delegation of

---

[1]NRS 242B.010(1): Express trusts may be created in real or personal property, or either or both, or in any estate or interest in either or both, with the state, or any county, municipality, political or governmental subdivision, or governmental agency of the state as the beneficiary thereof, and the purpose thereof may be the furtherance, or the providing of funds for the furtherance, of any authorized or proper function of the beneficiary; but no funds of the beneficiary derived from sources other than the trust property, or the operation thereof, shall be charged with or expended for the execution of the trust, except by express action of the legislative authority of the beneficiary first had.

legislative authority in violation of art. 3, § 1, of our Constitution. City of North Las Vegas v. Public Service Comm'n, 83 Nev. 278, 429 P.2d 66 (1967). It is equally clear that art. 15, § 4, which precludes perpetuities "except for eleemosynary purposes" does not touch this case, since the trusts authorized are charitable and eleemosynary in character, Nixon v. Brown, 46 Nev. 439, 214 P. 524 (1923), and are public as distinguished from private trusts.

For the reasons expressed, the constitutional attacks upon ch. 502 are without substance.

A peremptory writ of mandamus shall issue directing the respondent to attest the acceptance clause of the trust indenture.

ZENOFF, C. J., and BATJER, MOWBRAY, and GUNDERSON, JJ., concur.